STATE OF WEST VIRGINIA

*In re* **K.R.**

**No. 19-0074** (Webster County 18-JA-1)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Father M.R., by counsel Jared S. Frame, appeals the Circuit Court of Webster County's December 15, 2018, order terminating his parental rights to K.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights because he shared a strong bond with the child, supported the child financially, and his noncompliance with services was the result of employment out of town.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed an abuse and neglect petition that alleged the mother filed for a domestic violence protective order against petitioner after he threatened both the mother and the child. During an investigation, the mother informed Child Protective Services ("CPS") that petitioner abused drugs and alcohol; was violent toward her in the child's presence; "threatened to burn the house[;] and . . . threatened to kill [the mother's] family." During one incident, petitioner "smashed [the child's] toddler bed." The child corroborated these allegations, telling CPS that petitioner "was mean[,] . . . screamed at [m]ommy[,] . . . [and] broke her . . . bed." Petitioner also admitted to CPS that he used marijuana and then tested positive for this substance. Based on these

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

facts, the DHHR alleged that petitioner abused the child by abusing drugs and alcohol and committing domestic violence in her presence. Petitioner thereafter waived his preliminary hearing and was ordered to submit to random drug screening.

In February of 2018, the circuit court held an adjudicatory hearing. During the hearing, the DHHR presented testimony from the child's nonabusing mother and a CPS worker. Ultimately, the circuit court adjudicated petitioner of abusing and neglecting the child by engaging in domestic violence in the child's presence. According to the circuit court, petitioner's actions "cause[d] serious emotional distress to the child." Following this hearing, the circuit court granted petitioner an improvement period in April of 2018. According to the record, the terms of the improvement period were to include (1) weekly drug testing; (2) a hair follicle drug test; (3) "domestic violence classes, parenting classes[,] and anger management classes"; (4) no use of alcohol or controlled substances, not be in the presence of anyone using such substances, and not be in the presence of anyone convicted of any crimes involving drugs or alcohol; and (5) employment.

In May of 2018, the DHHR filed a motion to revoke petitioner's improvement period and terminate his parental rights. According to the DHHR, petitioner tested positive for amphetamine and methamphetamine on a drug screen administered on May 26, 2018. The DHHR filed a second motion based upon an additional drug screen positive for amphetamine and methamphetamine administered in June of 2018.

In November of 2018, the circuit court held a dispositional hearing and found that petitioner failed to comply with the terms and conditions of his improvement period. In addition to multiple positive drug screens, including a screen taken on the day of the hearing, the circuit court found that petitioner failed to undergo the ordered hair follicle testing, did not cooperate with his service provider, and did not participate in the services offered. Additionally, the circuit court found that petitioner had not seen the child since the proceedings began. As such, the circuit court revoked petitioner's improvement period and terminated his parental rights to the child.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The child remains in the custody of her nonabusing mother.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, the Court finds no error in the proceedings below. While petitioner argues that it was error to terminate his parental rights, the record is clear that the circuit court did not err in imposing this disposition.

At the outset, it is important to note that petitioner's financial support of the child is wholly irrelevant to the issue of disposition, as petitioner was not adjudicated for any alleged failure to provide the child financial support.[3] Instead, petitioner was adjudicated based on his substance abuse and issues with domestic violence, two conditions that continued throughout the proceedings unabated. As such, petitioner's argument on appeal that he financially supported the child has no bearing on this Court's analysis of the circuit court's determination of whether petitioner remedied the conditions of abuse and neglect such that reunification with the child was warranted.

Further, petitioner's argument that he had a strong bond with the child is unpersuasive, given that the record contains evidence that contradicts this assertion. According to petitioner, prior to removal he was "living in the same household" as the child and was "heavily involved" in the child's caretaking. What petitioner fails to recognize, however, is the effect that his actions had on the child and their allegedly strong bond. According to the record, the child witnessed petitioner commit domestic violence in the home. During his violent outbursts, petitioner broke the family's belongings, such as the child's toddler bed. After witnessing these acts, the child reported to the DHHR that petitioner "was mean [and] . . . screamed at [m]ommy." The child also told the DHHR that petitioner broke her bed. Based on this evidence, the circuit court specifically found that petitioner's actions "cause[d] serious emotional distress to the child." Rather than evidencing a strong bond between petitioner and the child, this evidence shows that the child feared petitioner because of his actions.

Finally, we find no merit to petitioner's argument that his noncompliance with the terms of his improvement period was caused by his employment out of town. However, even if that was true, it would not have entitled him to a less-restrictive dispositional alternative. In moving to

---

[3]In its adjudicatory order, the circuit court found that petitioner's alcohol abuse "affect[ed] his ability to provide for the child." However, it is unclear what, exactly, the circuit court believed petitioner failed to provide. There is no indication that this finding concerned financial support. According to West Virginia Code § 49-1-201, a "neglected child" is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." Accordingly, it is clear that, as the child's parent, petitioner was required to provide the child with a broad range of necessary care beyond financial support. Further, the DHHR's petition did not include any allegation that petitioner failed to provide for the child financially. Accordingly, the circuit court was precluded from adjudicating petitioner upon a failure to provide financial support without first requiring the DHHR to amend its petition. *See* Syl. Pt. 5, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006) (permitting a circuit court to compel the DHHR to amend a petition to include new allegations when "in the course of a child abuse and/or neglect proceeding, a circuit court discerns from the evidence or allegations presented that reasonable cause exists to believe that additional abuse or neglect has occurred or is imminent which is not encompassed by the allegations contained in the [DHHR]'s petition").

3

revoke petitioner's improvement period, the DHHR relied upon two drug screens that were positive for amphetamine and methamphetamine. The record further shows that petitioner tested positive for THC during a screen taken on the day of the dispositional hearing. Clearly, petitioner's continued substance abuse against court order had nothing to do with his employment out of town. Further, although petitioner argues that the DHHR "gave up on him complying" after his initial failure to initiate services, this argument also lacks merit. According to West Virginia Code § 49-4-610(4)(A), when a parent is granted an improvement period, "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." As such, it is clear that this responsibility was petitioner's, not the DHHR's. Rather than the DHHR "giving up" on petitioner, it is clear that petitioner chose not to comply with the requirements of his improvement period by initiating those services or following through with their completion. This is especially true in light of the fact that petitioner's parenting services provider testified that, in order to accommodate his employment, services were scheduled on Saturdays because petitioner reported that he would be in town on the weekends. Despite this accommodation, petitioner still failed to initiate his services or otherwise comply. As such, it appears that petitioner made no attempt to participate in the services ordered.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The evidence above supports the circuit court's finding that petitioner was entirely noncompliant with the services provided. As such, there was no reasonable likelihood petitioner could substantially correct the conditions of abuse or neglect in the near future. Further, given the extreme impact petitioner's actions had on the child and his failure to correct the conditions of abuse, it is clear that termination of his parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Further, this Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given that petitioner failed to follow through with the reasonable family case plan, it is clear that he was not entitled to a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 15, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison